CHARLES S. CHABOT, APPELLANT, VS. THE WINTER PARK COMPANY, A CORPORATION, AND GEORGE B. DORN, APPELLEES.

1. In a court of equity time is not considered as of the essence of a contract, unless expressly so provided by the terms thereof.

2. Where one party to a contract for the sale of lands is in default and is guilty of laches and negligence to perform the same, the other party may give a notice fixing a reasonable time for the performance of the contract, and has the right to treat the contract as abandoned if not complied with in such limited time.

3. Where a party to a contract is in default, and receives a notice of the character mentioned in the preceding head-note and makes no reply thereto, or any protest or assertion of right contrary to the notice, and makes no effort to comply with the requirements of the same, he will be held as acquiescing in the demand contained in the notice as consenting to a rescission of the contract, and as abandoning all rights he might have had to enforce the performance of the same.

4. There can be no general rule as to what is a reasonable time to be allowed a party in default for the performance of a contract, when required to do so by a notice of the kind mentioned in preceding head-notes. Much depends upon the circumstances of each case. In this case the act required to be performed was simply the payment of a sum of money. The time fixed for the performance of the act by the notice requiring performance was nearly forty days. Under all the circumstances of this case, held to be a reasonable time.

5. While a court of equity does not regard time as of the essence of a contract, unless it is so expressly stipulated, yet it will require of one who seeks specific performance of a contract that he shall not be guilty of unreasonable delay, and shall bring his suit with reasonable promptness.

6. The specific performance of a contract for the sale of lands is not a matter of right in either party, but rests in the sound reasonable discretion of a court of equity.

7. In this case the complainant, who was in default in performing his contract, received from the Winter Park Company, the other party to the contract, a notice fixing a reasonable time

for the performance of the contract, or that it would consider the same abandoned, and resume possession of the land; he paid no attention to such notice, and made no effort to perform the contract for considerably more than a year, and waited for nearly a year and four months after the expiration of the time fixed in the notice, and after the property had been sold to another, before bringing his suit: *Held*, That such delay was unreasonable, and that by reason thereof a court of equity should not decree a specific performance of the contract.

8. In cases where the complainant does not make such a showing as entitles him to specific performance of a contract for sale of lands, the prayer of the bill for specific performance may be denied, and if the bill contain appropriate prayers it may be retained for the purpose of adjusting other equities which may have arisen between the parties in relation to the same contract.

9. Where a vendee in possession under a contract of purchase makes valuable improvements upon the land, upon the faith of his contract, and the contract is such that specific performance can not be enforced, the vendor will be compelled to refund the purchase money, and to pay the actual value of the improvements.

10. A vendee in possession who sues for specific performance of a contract for sale of lands is entitled to compensation for improvements only when he is free from fault himself and fails to obtain specific performance of the contract by reason of some technical defect in the contract, or on account of its failure to comply with the statute of frauds. If the failure to obtain specific performance is owing to laches or negligence of the vendee to perform his part of the contract, he is not entitled in a court of equity to compensation for such improvements.

Appeal from the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the court.

*W. H. Jewell* for Appellant.

*Massey* & *Wilcox* for Appellee.

LIDDON, C. J.:

The appellant, who was complainant below, brought his bill in equity against the appellees. The bill prayed for specific performance by the defendant, the Winter Park Company, of a contract for the sale of a lot in the town of Winter Park, and for cancellation of a deed made to the same lot by said defendant to George B. Dorn, its co-defendant; and also prayed in the alternative that the defendant, the Winter Park Company, be compelled to refund to the complainant the difference between the fair value of the premises and the amount due to said company by the complainant. After demurrers to the bill of complaint were overruled, the defendants answered the same. The case was set down by the complainant for hearing upon bill and answer and was so heard, and upon such hearing the court dismissed the bill. By this course all the material averments of the answer were admitted to be true.

The facts of the case as gathered from the bill and answer are substantially as follows: On the 12th day of September, A. D. 1885, the Winter Park Company agreed to sell to the complainant, and the complainant agreed to buy, the lot in the bill of complaint mentioned. The purchase price of said lot was $250, of which amount $100 was paid in cash, and the remainder, with interest at eight *per cent. per annum*, was to be paid one year from the date of said sale. The complainant went into possession, but the Winter Park Compay reserved the title to said lot, agreeing to execute a warranty deed to the complainant upon his compliance with the terms of sale. The record does not

disclose whether this original contract was in writing or by parol, but it is stated in the brief for appellant to have been by parol. The complainant after taking possession made some small improvements upon the lot, not exceeding $300 in value, consisting of an inferior dwelling and a blacksmith shop. The complainant failed to pay the balance of the purchase money on September 12th, 1886, according to the terms of the agreement. In the spring of 1887, when the complainant was about to remove to the State of Massachusetts, a new agreement was made by the parties. This agreement was, in substance, that complainant should give his note dated September 12th, 1885, payable in one year to the order of said company for $150, with interest at eight *per cent. per annum* from date, payable at the Lyman Bank, Sanford, Florida, and that the defendant, the Winter Park Company, should place a warranty deed to said lot in escrow with said bank. The said note and said deed were duly prepared by the parties, and were by the secretary of the Winter Park Company, but with the full knowledge and consent of the complainant, both placed in an envelope which was marked as follows: "The enclosed deed and note are hereby left in escrow with the Lyman Bank, Sanford, with the following conditions: in case the note is promptly and fully paid, the deed is to be delivered to Charles S. Chabot, or order; otherwise the deed to be returned to the Winter Park Company, and the note to said Charles S. Chabot. For the Winter Park Company, J. S. Capen, secretary." The said note and deed, enclosed in said envelope, were deposited with the Lyman Bank in accordance with said agreement. The note was ante-dated, and by its terms was already past due at the time it was signed, but it was at said time verbally agreed by the parties to the

transaction that it should become actually due and payable September 12th, 1887. The bank was advised of the time of the maturity of the note under the agreement. Before September 12th, 1887, the date fixed for the payment of said note, the complainant wrote to the Winter Park Company that he would be unable to pay it at maturity; and thereupon the Winter Park Company instructed the bank to hold the papers on the same terms until January 1st, 1888. Some weeks after this date, the complainant not having paid the note, the bank returned the papers to the Winter Park Company, and they were afterwards cancelled. The complainant was at the time fixed for the payment of the note, and continuously afterwards, absent in the State of Massachusetts. It appears from a letter of the defendant, the Winter Park Company, to the complainant, dated October 24th, 1888, which was attached as an exhibit to the bill of complaint, that it had written complainant several times in the Spring of 1888, in reference to the lot, especially about the taxes upon the same, without obtaining any reply whatever. On June 14th, 1888, the defendant, the Winter Park Company, sent a letter to the complainant by registered mail, and which was duly received by him. This letter read as follows:

The Winter Park Company,
Winter Park, Orange County, Florida.
June 14th, 1888.

Charles S. Chabot, Esq.,

My Dear Sir: I enclose a statement of your account for Lot thirty, Block 31, of the town of Winter Park, which you bargained for from the Winter Park Co. on Sept. 12th, 1885, promising to pay the balance in one year from date, at eight *per cent.* interest. Not having carried out any part of that arrangement, this is to

notify you that if the balance ($149.56) due as shown on the statement is not fully paid by or before July 20th, 1888, the aforesaid agreement will be null and void, and we shall take possession of the premises, and in our own name occupy, own, rent or dispose of said property.

Very resp'y,<br>The Winter Park Co.,<br>Per J. S. Capen, Sec't'y.

The above was signed in presence of Henry S. Chubb, J. H. Abbott.

This letter was accompanied by a statement of account which was as follows:

Winter Park, Florida, June 14th, 1888.

C. S. Chabot

In account with

| 1885 | The Winter Park Co. | Dr. |
|---|---|---|
| Sept 12 | To Lot 30, Block 31, of the town of Winter Park, as per contract.... | $250 00 |
| 1887 | | |
| Decr. 16 | To putting glass in window........ | 1 40 |
| 1888 | | |
| Jany. 31 | To taxes.................... ...... | 3 42 |
| | | 254 82 |

| 1885 | Cr. | | |
|---|---|---|---|
| Sept. 12 | By cash.............. | 100 00 | |
| 1887 | | | |
| Oct. 17 | By cash rent Waas...... | 10 00 | |
| 31 | By cash rent of kitchen 2 00 | | |
| | Less fixing pump..... | 50– 1 50 | |
| Nov. 19 | By cash rent Waas...... | 10 00 | |
| Decr. 23 | " " " " ...... | 7 00 | |

1888  
June 1 " " " Klemmer.... 10 00— 138 50

116 32  
June 5   To interest to date.... ............ 33 24

$149 56

The complainant paid no attention whatever to this letter, not even acknowledging receipt. On the 26th of July, 1888, the defendant, the Winter Park Company, sold and conveyed said lot to its co-defendant George B. Dorn for $300, and put him in possession of the same, the said defendant Dorn having full knowledge of the status of the contract between the complainant and his co-defendant. The defendant, the Winter Park Company, had according to their notice taken possession of said property before selling the same to Dorn. The complainant by himself or his tenant had been in possession of the property a portion of the time intervening between the date of the sale and the retaking of possession by the defendant, the Winter Park Company, but what portion of said time, is not shown by the record. The secretary of the Winter Park Company, acting for its benefit, had looked after the property, collected some rents and accounted for the same to the complainant as part of the purchase money, as shown by the statement of account hereinbefore set out. The complainant a short time before November 16th, 1889, tendered to the Winter Park Company the amount due, and demanded a deed to the premises. The complainant offered to pay the amount due, upon delivery of a deed to the premises, or to pay the money into the registry of the court. The tender having been refused, and the Winter Park Company refusing to make the deed, the bill of com-

Chabot v. The Winter Park Co. and Dorn.—Opinion of Court.

plaint was filed November 16th, 1889. Upon these facts the appellant contends that the court below should have granted one or the other of his prayers for relief; that if the court below found that the complainant was not entitled to a specific performance of the contract, it should have retained the bill of complaint, and have allowed the complainant compensation for the improvements placed upon the lot by him, while he was in possession under his contract of purchase.

From the facts stated it appears that the Winter Park Company had been extremely liberal in extensions of time to the complainant, and endeavored to afford him full opportunity to comply with his contract. In granting such favors it cancelled the original contract and made a new one, giving an extension of one year, or until September 12th, 1887. At complainant's request it granted a further extension until January, 1888. After this date the complainant ceased, until October 16th, 1888, long after the lot had been sold to Dorn, to have any communication with the Winter Park Company. Although it wrote him several times in reference to taxes upon the lot, and other matters connected with the same, he entirely ignored the letters, not even acknowledging receipt of them; and a reasonable conclusion from his actions in the matter was that he did not desire further negotiations with the company, and had abandoned his contract with them. During this interval the notice of June 16th, 1888, hereinbefore set forth, was sent to complainant. Not only did he fail to comply with the notice, but it failed to elicit any reply whatever from him, beyond the receipt required to be given by the recipient of a registered letter by the United States postal laws and regulations. Upon the expiration

of the time limited in the notice the Winter Park Company cancelled the contract, resumed possession of the property, and sold and conveyed it to Dorn.

It is admitted by all parties that the various extensions granted the complainant amounted to an acquiescence in his failure to perform his contract, and kept the contract in force until the time limited in the notice of June 14th, 1889. It is insisted by the appellant that time was not of the essence of the contract, and that the Winter Park Company had no right to make it such, or to put a limitation upon the time of performance by the complainant, by giving such notice. We agree that time was not of the essence of the original contract in this case; unless expressly stated so to be, it is not generally so regarded in a court of equity. Southern Life Ins. & Trust Co. vs. Cole, 4 Fla., 359. While time may not be the essence of the original contract, the principle is well established that where one party to a contract is guilty of laches and negligence to perform the same, and the time for performance has passed, the other party may, by giving notice, fix a reasonable time for the performance of the contract, and has the right to treat the contract abandoned if not complied with in such limited time. Waterman on the Specific performance of Contracts, secs. 465–483; 2 White and Tudor's Leading Cases in Equity, p. 1137, note to Seton vs. Slade and authorities cited; Kirby vs. Harrison, 2 Ohio St., 326. Although the complainant was in default, he made no reply whatever to the notice. If he had desired still further extension of time he should have let his wishes be known. If he considered that he had further rights in the matter, and that the Winter Park Company could not put a limitation of time upon

him, he should have been prompt in the assertion of such rights. Failing to ask any further extension or to assert any right he must be held as acquiescing in the demand contained in the notice, and as abandoning all rights he might have had to enforce the performance of the contract. Gentry vs. Rogers, 40 Ala., 442, text 449. In order that such a notice have the effect to put a limitation upon the time for the performance of a contract, the time fixed for the performance of the contract should be a reasonable time within which to do the act required. There can not in the nature of things be any fixed rule as to what constitutes a reasonable time in such cases. It must depend upon the facts of each particular case. The time fixed for the performance of the contract in the notice in question was nearly forty days. The simple act required to be done was the payment of a sum of money. True the complainant lived in Massachusetts, and the defendant corporation was in Florida. We can not, however, close our eyes to what is a matter of common knowledge, that in this age of electricity and steam, in the facilities they afford for communication between different states of the Union, and the transmission of money and other articles from one portion of the country to another, have practically annihilated distance and time. Under all the circumstances of the case we think the limitation of time fixed in the notice was a reasonable one.

There is another reason why we think the complainant was not entitled to specific performance of the contract: He did not come into court with sufficient promptness. While a court of equity will not as stated regard time as of the essence of a contract unless expressly made such by the contract itself, yet it will require that one who seeks specific performance of

a contract shall not be guilty of unreasonable delay, and shall seek his redress with reasonable promptness. The specific performance of a contract for the sale of lands is not a matter of right in either party, but rests within the sound reasonable discretion of a court of equity. This discretion will only be exercised where the complainant shows himself prompt and eager to perform the contract on his part and to have same performed by the other party. Knox vs. Spratt, 23 Fla., 64, 6 South. Rep., 924; Van Doren vs. Robinson, 16 N. J. Eq., 256; Goodwin vs. Lyon, 4 Porter (Ala.), 297; Potter vs. Dougherty, 25 Penn. St., 405; Gentry vs. Rogers, 40 Ala., 442, text 448, and authorities cited. In this case the complainant had no agreement or understanding for any extension of time for performance of his contract after January 1st, 1888. His laches after that time was of his own fault and wilfulness, and without the consent of the Winter Park Company. He had been long in default when the notice of June 14th, 1888, was sent to him. After this notice he made no protest or assertion of his rights, no payments, or efforts for further extension of time. When defendant, the Winter Park Company, wrote to him, he ignored the letters. Then after the notice of June 14th 1888, was given him, making no reply, he waited for considerably more than a year after the property had been sold to another party, before he tendered the money and sought to perform his contract, or sought to have the deed made to him. The suit was brought November 16th, 1889, nearly one year and four months from the expiration of the time limited in the notice. This we consider an unreasonable delay. What is a reasonable time within which to file a bill for the specific performance of a contract, can not be fixed with precision by any general rule. In Watson vs.

Reid, 1 Russell & Mylne, 236, cited with approval in Knox vs. Spratt, *supra*, one year after default was held to be an unreasonable delay upon the part of a vendor. In Gentry vs. Rogers, *supra*, likewise cited in Knox vs. Spratt, nine months was held to be unreasonable delay. The ground upon which delay in this class of cases is considered unreasonable is, that it raises a presumption that the party has abandoned the contract, and is equivalent to a consent to a rescission. Knox vs. Spratt, *supra*; Waterman on Specific Performance of Contracts, sec. 473, and authorities cited.

It is claimed by the appellant that although he might not have been entitled to a specific performance of the contract, yet that while he was a vendee in possession he made valuable improvements upon the land, and that the bill should have been retained, that he might recover compensation for these improvements. The alternative prayer of the bill is, that "said company be compelled to refund to complainant the difference between the fair value of said premises and the amount due said company." The "fair value" of the premises is not shown in the record. The price for which it was sold to Dorn, and the value of improvements put upon it by the complainant, are the only data throwing any light upon the subject of value of the premises. The case of Lewis vs. Yale, 4 Fla., 418, asserts the general doctrine to be "that a court of equity can not award compensation in damages for injury sustained by non-performance of a contract, where the primary relief (specific performance) can not be decreed." This case was upon the general subject of damages for the breach of contracts for the sale of lands, and the damages sought to be recovered were not on account of improvements erected upon the land.

The head-notes in the case of Glinski vs. Zawadski, 8 Fla., 405, say: "1. Where the object of the bill is to compel the 'specific performance' of a contract, if the prayer be denied (as a general rule), the bill will be dismissed; but there are exceptional cases, as where equity is found to have arisen between the parties to the contract growing out of its peculiar character or nature. In such case the bill may be retained for the purpose of having that equity adjusted. 2. Where one contracts to purchase real estate, and proceeds to erect improvements thereon, if compensation therefor be decreed him, the *amount* is to be based upon the actual *value* of the improvements, or, at farthest, upon a *reasonable allowance*, and not upon the amount expended." We have no doubt that in a proper case the equities might be such that where the prayer of the bill for specific performance is denied, the court would retain the bill and adjudicate any other equities which had arisen between the parties. In cases where the vendee in possession had made valuable improvements upon the faith of his purchase, and the contract is such that specific performance thereof can not be enforced, the vendee will be compelled to refund the purchase money, and to pay the actual value of the improvements. Waterman on Specific Performance of Contracts, sec. 281, and authorities cited. We find a large number of cases of specific performance of contracts for the sale of land wherein the primary relief prayed for, *i. e.*, specific performance, was denied, and yet compensation was allowed the complaining vendee for improvements put upon the land, upon the faith of his contract. In all of these cases the complainant was free from fault, and specific performance was denied by reason of some defect in the contract, or non-compliance with the statute of frauds.

These adjudications are reiterations of the doctrine everewhere enforced by courts of equity, that the statute of frauds should not be used as an instrument of fraud. We have been unable to find any case where compensation was allowed a vendee where his case failed, not from any technical defect in the form of his contract, but on account of his own laches, negligence and disregard of his obligations. The appellant in this case may suffer some pecuniary loss from which we might wish to save him, but he is in a predicament into which he has gotten himself by his own conduct, and from which we are powerless to extricate him. Hatch vs. Cobb, 4 Johns. Chy., 559; Goodwin vs. Lyon, 4 Porter (Ala.), 297.

There is no error in the decree appealed from, and it is affirmed.