## JAEGER v. O'DONOGHUE.

(Court of Appeals of District of Columbia. Submitted May 6, 1925. Decided June 1, 1925. Motion for Rehearing Denied June 24, 1925.)

No. 4190.

I. Specific performance ⊙⟲99—Purchaser, permitting time for performance of contract to expire without effort to perform, held not in position thereafter to enforce specific performance.

Purchaser of realty, who permitted time for completion of contract to expire without making effort to perform, though he knew that agent who had been acting for him was ill and not attending to matter, and though he knew that he had not tendered payment, signed notes, or executed trust deed as provided in contract, held, not in position thereafter to enforce specific performance.

**2. Vendor and purchaser ⚖182—Vendor of realty held within her rights in refusing to accept trust deed wherein purchaser's agent was named as trustee.**

Vendor of realty held within her rights in refusing to accept trust deed to secure deferred payments wherein purchaser's agent was named as trustee.

Appeal from the Supreme Court of the District of Columbia.

Suit for specific performance by Patrick O'Donoghue against Mary Jaeger. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. G. Gardiner and J. W. Tomlinson, both of Washington, D. C., for appellant.

G. E. Sullivan, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a decree of the Supreme Court of the District of Columbia, requiring appellant, defendant below, to specifically perform a certain contract for the purchase of lots A and B, in square 317, in the city of Washington.

The contract, among other things, provided that the purchase price of the property should be $49,500; $18,000 to be paid in cash, and the purchaser to give back a note for $18,000 for 3 years at 6 per cent., secured by a first deed of trust on lot B, and a note for $13,500 for 3 years at 6 per cent., secured by a first deed of trust on lot A. The examination of the title and conveyancing was to be at the cost of the purchaser, and the purchaser was "required to make a full settlement in accordance with the above terms of sale within 60 days from this date." The contract was dated November 18, 1922; consequently the 60 days expired on the 17th day of January, 1923.

The sale was negotiated on behalf of plaintiff, O'Donoghue, by one Jesse L. Heiskell, a real estate agent, and on behalf of defendant, Jaeger, by C. W. Simpson Company, real estate agents. The examination of title and conveyancing was placed by Heiskell with the Columbia Title Insurance Company.

It is averred in the bill that:

"On, to wit, January 8, 1923, plaintiff received a title report from the Real Estate and Columbia Title Insurance Companies, showing the title in the aforesaid real estate to be good of record in the defendant Mary A. Jaeger, subject only to her aforesaid contract with this plaintiff, and subject to a deed of trust for $10,000 securing the Perpetual Building Association, dated November 3, 1921, and recorded November 7, 1921," which defendant had the privilege of paying off at any time.

On the 12th of January, Heiskell sent the following letter to the Simpson Company: "Inclosed I am handing you deed in proper form from Mrs. Mary Jaeger to Mr. Patrick O'Donoghue. Kindly have her sign same, and we will be ready to settle the transaction on Monday, the 15th instant. I would like to know the balance due the building association, to what date the rents are paid, as to whether the first half the taxes have been paid, and whom Mrs. Jaeger wants to name as one of the trustees under the deferred purchase money. If you will give this your attention, we will prepare the statements, so that the matter may be promptly settled."

On the morning of January 13th, Mr. Simpson, Mr. Cryor, of the Simpson Company, and Mr. Jaeger, representing his wife, went to the office of Mr. Heiskell for the purpose of seeking a change in the terms of the contract. Jaeger requested that, instead of the $10,000 trust due the Building Association being deducted out of the $18,000, the $18,000 should be paid in cash, and that the Building Association trust be assumed, and a second trust be given for the balance of the purchase money. This change Heiskell refused to make. While there is some conflict in the testimony, it is clear that a heated discussion arose between Heiskell and Jaeger, at which Jaeger laid down the deed with the statement that he would not carry out the contract.

On the morning of the 15th, however, Mr. Jaeger returned to the office of his agents, Simpson Company, and stated that his wife was prepared to carry out the contract according to its terms. This information was communicated to Mr. Heiskell's office, whereupon Mr. Heiskell prepared two unexecuted deeds of trust, which were sent, together with the deed, to the office of Simpson Company. When Jaeger saw the deeds of trust, and discovered that Heiskell was named as one of the trustees, he objected, stating that he would not permit his wife to close the transaction with Heiskell as a trustee. This information was communicated to Heiskell's office, and the deeds of trust were returned for correc-

tion, with a request that Charles W. Simpson and Charles E. Marsh be named as trustees in the deeds of trust.

The testimony discloses that during this period it was impossible to get Mr. Heiskell over the telephone; his office reporting that he was sick and could not be reached. It, however, appears from Heiskell's testimony that during the week from Monday, the 15th, till Friday, the 19th, Mr. Heiskell, though indisposed, was at his office. On the 19th he went to a hospital, where he remained for about 10 days.

The deeds of trust, returned to Heiskell's office for correction, were never returned to Simpson's office, corrected or otherwise. It further appears that on the 17th of January, the last day for the completion of the contract, appellant's husband brought appellant into Washington from their home in Maryland, for the purpose of closing up the transaction. Appellant remained until the afternoon of the 18th before returning home. During this period several attempts were made, according to the testimony of Simpson, Cryor, and Carl Jaeger, husband of appellant, to get into communication with Heiskell's office, and have the transaction closed. Jaeger testified that for some days thereafter he went to Heiskell's office several times in an attempt to have the matter closed, but was unable to get into communication with Heiskell; his conversation being with Mr. Merritt, who seemed to be in charge of Heiskell's front office. Mr. Merritt died before this case was heard. Heiskell returned from the hospital on the 29th of January, and on the 2d of February the bill in this case was filed.

[1] We are not much concerned with Heiskell's actions in regard to carrying out this contract. The bill for specific performance is filed by O'Donoghue, the plaintiff. While Heiskell was his agent, and doubtless empowered to carry out the contract on behalf of O'Donoghue, O'Donoghue could not sit silently by and allow the time for the completion of the contract to expire, and then come into a court of equity for specific performance. He knew, or ought to have known, the terms of the contract; he knew, or ought to have known, when the contract expired; he knew, or ought to have known, that Heiskell, his agent, was ill and not attending to his business in connection with this contract; he knew, or ought to have known, that the contract expired on the 17th of January, and that up to that time he had taken no

steps toward performing it; he, the purchaser, had signed no notes; he had executed no deeds of trust; and he had tendered no money. With notice of all these things O'Donoghue is chargeable, and until he could show a strict compliance with these requirements, or a good and sufficient tender to perform these requirements, he was not in a position to come into a court of equity and enforce specific performance. He was "required to make full settlement in accordance with the above terms of sale within 60 days from this date."

[2] Defendant was well within her rights in refusing to accept Heiskell as a trustee. A trust deed is a conveyance of real estate intended to be pledged in fee simple to one or more trustees; and the trustee or trustees hold the property for the benefit of the holder of the note, bond, or other obligation secured by the deed of trust. The grantor, while permitted to retain possession and enjoy the profits of the estate, has conveyed to the trustee or trustees full power in the event of his default to make a sale of the premises and satisfy the holder of the deed out of the net proceeds, returning the surplus, if any, to the grantor. The trustees, therefore, are primarily the agents of the person secured by the deed of trust, and are merely intended as such to act in his place in enforcing the obligations thereby secured, in the event of the default of the grantor. 27 Cyc. 966. It was therefore the duty of the purchaser to fulfill and carry out the obligations of his contract, among which was to execute satisfactory deeds of trust to secure the deferred payments upon the property in question, and, as part of that obligation, trustees satisfactory to the grantee should be named in the deeds. The plaintiff can therefore find no excuse for his failure to tender performance in the refusal of defendant to accept Heiskell as one of the trustees.

However, notice of this objection was given to plaintiff through his agent, Heiskell, within sufficient time to have inserted another name in the deeds of trust, and to have tendered performance, as plaintiff was required to do, before the expiration of the 60 days. Defendant was not required to execute the deed until a tender of performance had been made by plaintiff. The obligation of moving first was assumed by plaintiff, under the terms of the contract. "Where a specified thing is to be done by one party as the consideration of the thing to be done by the other, it is undeniably the

general rule that the covenants are mutual, and are dependent, if they are to be performed at the same time; and if, by the terms or nature of the contract, one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done, or tendered, before that party can sustain a suit against the other. There is no doubt that in this class of contracts, if a day is fixed for performance, the party whose duty it is to perform or tender performance first must do it on that day, or show his readiness and willingness to do it, or he cannot recover in an action at law for nonperformance by the other party." Phillips Construction Co. v. Seymour et al., 91 U. S. 646, 650 (23 L. Ed. 341).

It conclusively appears from the testimony—indeed, it is not controverted—that defendant, Mrs. Jaeger, came in from her home in Maryland on the morning of the 17th, and remained throughout that day and until the afternoon of the 18th, for the purpose of carrying out her contract; that this readiness on her part was communicated to Heiskell's office, but without resulting in any action on the part of the plaintiff. This, however, is not of great importance, since, conceding that the covenants in the contract were mutual and to be simultaneously performed, defendant was not required to execute the deed until the plaintiff presented himself, prepared, ready, and willing to execute the notes, the deeds of trust, and make the cash payment required, all of which the plaintiff failed to do, or failed to tender himself ready to do. It was at this critical moment, the expiration of the 60-day period, that the plaintiff, O'Donoghue, should have been active. If plaintiff desired the performance of the contract, it was his duty, within time, to make his part of the agreement precedent. If he relied upon his agent to look after the performance of the terms and conditions of his contract, and the agent failed, that failure is his, and he is in no position to enforce specific performance, on the theory that his agent, by reason of sickness or for any other reason, failed to protect his interests.

Plaintiff cannot excuse his failure to perform on the statement of Jaeger, on the 13th, that he would not carry out the contract. Negotiations were resumed on the morning of the 15th, when Jaeger notified his agents that his wife was prepared to carry out the contract according to its terms, and Heiskell, acting on the strength

6 F.(2d)—44

of it, prepared two unexecuted deeds of trust, which he sent, together with the deed Jaeger had left at his office, to the office of Simpson Company. This constituted a complete resumption of negotiations. Indeed, it is not claimed by plaintiff that Jaeger's action on the 13th in any way interfered with his performance of the contract. Nor is plaintiff aided by the failure of defendant to tender a deed properly executed. However defendant's actions might have operated to defeat his right to enforce specific performance, they in no respect relieved the plaintiff from his obligation to make a full tender of performance before the expiration of the 60-day period.

In the case of Kelsey v. Crowther, 162 U. S. 404, 408, 16 S. Ct. 808, 810 (40 L. Ed. 1017), the action was for specific performance by Kelsey and one Gillespie, the purchasers of a certain piece of real estate from the defendant Crowther. The contract was in many respects similar to the one here in issue. The purchasers were to examine the title, and, if found satisfactory, within 30 days make full payment of the consideration; Crowther, the vendor, binding himself to "execute, sign, and acknowledge and deliver a full and perfect warranty deed, conveying to said purchasers the entire title to said premises, and I agree to at once furnish an abstract of title to said premises and other needful papers." Payment was not tendered within the 30 days, nor was the abstract of title ever furnished by Crowther as agreed. On the next day following the expiration of the 30-day period, a tender of the purchase price was made, and a deed demanded. The vendor refused to accept the money or execute a deed. The court, disposing of the case, said:

"The action was in the nature of a bill for specific performance of a contract for the sale and purchase of a tract of land. If the contract is construed as making it the duty of Crowther to tender the abstract, yet his failure to do so did not dispense with performance or the offer to perform on the part of the complainants. His failure to furnish the abstract might have justified the complainants in declaring themselves off from the contract, and might have formed a successful defense to an action for damages brought by Crowther. But, if they wished to specifically enforce the contract, it was necessary for the complainants themselves to tender performance. To entitle themselves to a decree for a specific performance of a contract to sell land, it

has always been held necessary that the purchasers should tender the purchase money. This is the rule in the ordinary case of a mutual contract for the sale ·and purchase of land. And the rule is still more stringently applied in the case of an optional sale, like the present one, where time is of the essence of the contract, and where Crowther could not have enforced specific performance. In such a case, if the vendee wish to compel the other to fulfill the contract, he must make his part of the agreement precedent, and cannot proceed against the other without actual performance of the agreement on his part, or a tender and refusal. Bank of Columbia v. Hagner, 1 Pet. 455, 464; Marble Co. v. Ripley, 10 Wall. 339, 359."

The present case is met from every standpoint by the above decision, and there is no theory left on which the plaintiff can claim the right to a decree for specific performance.

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.