Fred J. Munder, J.
In this action the plaintiff, as contract vendee, seeks specific performance of a contract wherein the defendant Flapan, as vendor, agreed to sell certain undeveloped property located at Miller Place in the Town of Brookhaven, Suffolk County, demanding "by way of relief that the defendant holding corporation, to whom the property was subsequently *813 conveyed, be required to execute and deliver to the plaintiff a good and sufficient deed to the same, and that both defendants be enjoined from otherwise conveying or incumbering the premises so as to defeat the rights of the plaintiff under the aforesaid contract of sale. The entire property in question consists of a narrow strip of wooded land running north and south for a distance of approximately two miles, which is bisected along its entire length by a paper street referred to as Central Boulevard, with a smaller parcel abutting its southwest extremity for a distance of 250 feet and extending westerly some 800 feet onto Helm Avenue. In the contract of sale the property is described as four separate parcels. Parcel No. 1 is described by metes and bounds and as being all of that portion which borders the “ easterly line” of Central Boulevard. Parcel No. 2 is also described by metes and bounds and as being that portion which runs from north to south along the “ westerly line ” of Central Boulevard for a distance of some 1,850 feet. Parcel No. 3 is described by lot numbers from an old filed map known as Map of Winthrop Gardens, No. 866, and includes the remainder of the land running south along the “ westerly line ” of Central Boulevard. Parcel No. 4 is described as being “ Lot #64, Bisley, consisting of 4.63 acres ”, and is the smaller parcel heretofore mentioned as abutting the southwest end of the premises and giving access to Helm Avenue. The contract was entered into on September 11, 1962. It called for a purchase price of $40,000 of which $4,000 was paid upon the execution thereof, the balance, subject to existing mortgages, to be paid on the closing of title. It provided that the seller would give and the purchaser would accept such title “ as any Title Guarantee and Trust Company will approve and insure ”. The contract was not conditioned upon the approval of any new subdivision maps. The plaintiff was given the option to cancel only in the event that there was an upzoning of the premises by the town. The time set for the closing of title was “ on or before March 20, 1963 ”, some six months after the signing of the contract.
It is alleged in the complaint that, although he, the plaintiff, was at all times ready, willing and able to perform his part of the agreement, the seller, on March 20, 1963, the date set for closing, was unable to convey a title such as any title guarantee and trust company would approve and insure by reason of the fact that the Inter-County Title Guaranty & Trust Company had refused to insure title until certain objections were cured. It is further alleged that on April 27, 1963, the title company withdrew its objections, and that the plaintiff, thereafter, on May 1, 1963, tendered performance which the defendant refused. *814 It is thereupon alleged that, after the plaintiff had recorded the contract on April' 30 and filed a lis pendens of this action, the defendant' Flapan attempted to convey the property on May 9, 1963, to the defendant B. & V. Holding Corp., thereby creating- a cloud on the title.
Both answers, in essence, deny that the plaintiff had duly performed all the terms and conditions of the contract on his part to be performed, deny that the plaintiff was ready, willing and able to perform his part of the agreement on the date set for closing, and deny that there were any valid objections to title that would justify the plaintiff in refusing to close title on March 20, 1963, or thereafter. Affirmatively the defendant Flapan contends that the plaintiff, having been served with an unequivocal notice in writing, upon his failure to appear on March 30, that there would be no further adjournments after April 3,1963, and having again refused to appear, was in default and that he, the defendant, was justified in canceling the contract. This defendant further alleges that, there having been no valid objections to title on the day set for closing, it was in all respects marketable and the plaintiff had no right to refuse to accept same. Having elected to cancel the contract and subsequently entered an agreement to convey the premises to a third party, it is alleged that this defendant could no longer convey to the plaintiff, and that the action for specific performance does not lie.
In answer to the defendant Flapan’s demand for a bill of particulars the plaintiff states that he was ready, willing and able to perform his part of the written agreement on or before April 3, 1963 (the final adjourned date set by the defendant), but that the defendant was unable to perform because there still existed an objection to title that was known to the defendant. He states further that the objections to title which existed on March 20, 1963, were a notice of pendency of an action to foreclose a mortgage, and two liens for the nonpayment of taxes. The objection to title that existed on April 3, 1963 is stated to be the refusal of the title company to insure title to “ the land lying in the bed of Central Boulevard ”.
The plaintiff is a surveyor by profession with considerable experience in real estate transactions, who apparently was desirous of obtaining this property for purely speculative purposes. He admitted an intent to resell the property prior to the closing date. He evinced an interest in the purchase of the property from the defendant Flapan, an attorney and real estate broker, as early as July of 1961. Some 14 months later he successfully negotiated a long-term contract which gave *815 him the opportunity to do' a considerable amount of engineering and surveying work in anticipation of a profitable resale to an interested developer. The plaintiff was given more than six months within which to take title. Commencing October 29, 1962, and throughout the ensuing weeks there were numerous letters and telephone conversations in which the defendant Flapan urged the plaintiff and his attorney to close title at an earlier date, or,, at least, on the date designated in the contract of sale. His exhortations were ignored, and on the day before March 20 this defendant received a request from the plaintiff for an adjournment of an additional six weeks. Considering the request unreasonable, he sent the plaintiff a registered letter to the effect that he was unwilling to grant any further adjournment beyond April 3, 1963. When the plaintiff neglected to appear on the latter date the defendant Flapan by letter declared him to be in default.
The testimony clearly indicates defendant Flapan’s anxiety and reasons for wanting to close title with the plaintiff prior to the law day designated in the contract, burdened as he was with mortgage indebtedness. He had originally offered the plaintiff only a three-month contract. It is also clear from the plaintiff’s testimony and actions that he had been in no hurry to close this title. It was only when he found a prospective purchaser that he showed a sudden revival of interest in the contract, weeks after the defendant had declared him to be in default. He was guilty of loches, and appears to have acted in bad faith.
It is undoubtedly the law of this State that although the date designated in the contract of sale does not necessarily result in making that date of the essence, the vendor may thereafter by proper notice bind the vendee to complete his obligations within a reasonable time to be specified in such notice; and, if within that time the vendee does not perform, equity will not decree specific performance of the contract, but will leave the parties to their remedies and liabilities at law. (Schmidt v. Reed, 132 N. Y. 108; Taylor v. Goelet, 208 N. Y. 253.) I find the letter sent by this defendant to the plaintiff on March 20, 1963 and setting a final closing date of April 3, 1963 to have constituted such notice. It was clear, distinct and unequivocal, and fixed a reasonable time within which the plaintiff was to perform. (Ballen v. Potter, 251 N. Y. 224.) Assuming the title was marketable, the defendant then had the right to declare the plaintiff in default, and to consider the contract terminated.
It now becomes necessary to examine the state of the title on March 20 and on April 3. It was proved on the trial of this action that the lis pendens which was alleged to have existed *816 was actually satisfied of record on the 1st of March, 1963, 19 days before the closing date, and that it was the plaintiff’s own title company that had satisfied this purported objection. The testimony of the plaintiff’s own witness, Miss Robbins, established conclusively that the two tax liens were actually satisfied on or before November 15, 1962, more than four months prior to the closing date. In addition the contract provides that such liens may be satisfied at the closing. So, as of March 20, 1963, no valid objections existed.
The first time an objection was raised to insuring the title to the land in the bed of Central Boulevard was by letter mailed to the plaintiff’s attorney on April 3, 1963. That objection was withdrawn on April 26, and the record shows that it would have been withdrawn months earlier had the plaintiff ordered a special search of the street. The evidence demonstrates that he never requested the title company to insure the bed of the street until after April 4, 1963, 15 days after the date set for closing and one day after the final date set by unequivocal notice. It can only be said that the plaintiff’s default in this respect was either willful or due to inexcusable indifference, in which case he would not be entitled to specific performance. (Arrow Holding Corp. v. McLaughlin’s Sons, 116 Misc. 555.) In any event this objection did not render the title unmarketable.
The descriptions in the contract were apparently taken from a survey made by one George H. Lutz, Jr., of Rocky Point, New York, on September 23,1955. That document.indicates that the total area surveyed consisted of some 67.13 acres which included Central Boulevard. It is now the plaintiff’s contention that what he contracted to buy was acreage which included the fee title to the bed of Central Boulevard. The only reference in the contract to the survey, however, is under the description of the third parcel which is described as consisting of lot numbers on an old filed map that do not include the bed of any street. The defendant Flapan agreed to sell the parcels, as clearly described in the contract, together with all right, title and interest, if any, that he may have had in and to any land lying in the bed of any street, road or avenue opened or proposed. Similar language appears in the metes and bounds descriptions of the first two parcels as well as in the printed portion of the contract. Two prior deeds which convey title to the defendant Flapan contain the same descriptive language. The boundary lines of parcels 1 and 2 are clearly expressed as being drawn along the easterly and westerly lines of Central Boulevard, respectively. If the words used in a contract have a clear and unmistakable meaning, resort may not be had to extrinsic *817 evidence to show a different meaning was intended. (1 Clark, New York Law of Contracts, § 61.)
In conclusion, I find that the plaintiff, having had more than six months within which to satisfy himself that no valid objections to title in fact existed on March 20, 1963, nor again on April 3, 1963, was completely unjustified in refusing to close title on either of these dates; and that the defendant, having given the plaintiff the required unequivocal notice to bind the latter to his obligations under the contract, justly declared him to be in default. Considering his contract with the plaintiff to be at an end, he negotiated a second contract of sale with the codefendant in this action, executed on April 29, 1963, and consummated on May 9, 1963, which he cannot now be compelled to break. (Saperstein v. Mechanic's & Farmers Sav. Bank, 228 N. Y. 257.) The recording of the subject contract by the plaintiff’s attorney has no bearing upon the issues in this case as it was recorded more than 30 days after the date designated therein for the conveyance of title. (Real Property Law, § 294, subds. 4, 5.) The defendants are therefore entitled to judgment dismissing the complaint.