**Sidney DRAZIN and Bernice Drazin, Appellants,**

**v.**

**The AMERICAN OIL COMPANY, Appellee.**

**No. 13102.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1978.

Decided Nov. 13, 1978.

Philip N. Margolius, Washington, D. C., for appellants.

William J. Rowan, III, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

NEWMAN, Chief Judge:

■ Appellants seek review of an order denying specific performance of a contract for the sale of land. The question presented to us on appeal is one of first impression in this court. The issue, simply stated, is: In a contract for the sale of land where time is not of the essence, can it thereafter be made of the essence by the unilateral act of one of the parties. We answer that it can and affirm the trial court.

In February 1976, appellants began negotiations with representatives of The American Oil Company (Amoco) for the purchase of a gasoline station owned by Amoco and located at 2600 14th Street, N.W., Washington, D. C. On March 1, 1976, appellants entered into a lease agreement to operate the station. In May 1976, a contract was entered in which appellants would purchase the property for the sum of $100,000 and would operate the property as a combination gasoline station and retail liquor store. The contract provided for a down payment of $10,000—which would be forfeited as liquidated damages if appellants defaulted— with the remaining sum to be paid at settlement on or before June 1, 1976.

The Alcoholic Beverage Control (A.B.C.) Board was considering appellants' application for a liquor license which necessitated

additional time for appellants to fulfill their obligations under the contract. Thus, on July 5, 1976, appellants requested and were granted an extension to October 1 to complete the terms of the contract,[1] though performance of the contract *was not* contingent on the granting of this license.

Appellants attempted to secure financial assistance for the purchase of the property throughout the summer months. Toward this end, the appellants contacted the Greater Washington Business Center and had a prospectus drawn up to aid in securing a loan for the purchase price. At no time prior to September 1976 did appellants file any formal applications for loans to purchase the property. As of October 1, appellants had not notified Amoco of a date for settlement nor provided certain documents to Amoco which were necessary to such settlement.

Amoco, by letter dated October 1, 1976, granted another extension for settlement until October 15, 1976. That letter stated:

Please refer to real estate sales contract dated March 23, 1976 between you and our company covering the purchase of the subject premises by you for the sales price of $100,000.00.

In accordance with the above-mentioned contract, settlement on this property was to be made on or before June 1, 1976. However, as a result of your request of July 5, 1976, the settlement date was extended until October 1, 1976. As of this date you have not advised us as to the time and place of settlement.

You are hereby notified that if settlement is not held on this property by October 15, 1976, said contract will become null and void and the $10,000 earnest money will be retained as liquidated damages in accordance with Paragraph 3 of said contract.

Appellants continued to try to secure the money needed to consummate settlement.

---

1. On June 22, 1976, the A.B.C. Board denied the appellants' application for a liquor license. On appeal, this court set aside the denial and remanded for further proceedings. *Jameson's Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 384 A.2d 412 (1978).

On October 14, they received an oral commitment from the chairman of the Bank of Columbia that he would recommend to the Executive Committee of the bank a loan to appellants in the sum of $55,000. Appellants also received a commitment from a family member to make up the difference needed under the contract.

Appellant Sidney Drazin went to the Atlantic Real Title Company on October 14 to make arrangements for the settlement of the property. A representative of the Title Company called to notify Amoco of a potential settlement at a future date. No telephone contact was made. On October 15, appellant Sidney Drazin tried again to contact representatives of Amoco to ask for another extension of the contract date. He could not contact any representative who had knowledge of this contract. At no time prior to or on October 15, 1976 were appellants ready to consummate settlement.

On October 27, 1976, Amoco wrote appellants a letter notifying them that since settlement had not occurred on October 15, 1976, the contract became null and void and a return of their $10,000 would be forthcoming. The money was returned on November 5.[2] Even though appellants knew that Amoco had declared the contract null and void and returned their $10,000 deposit, they nevertheless went through a proposed settlement without Amoco's presence on November 10, 1976.

Specific performance is an extraordinary equitable remedy, the denial or granting of which is within the "sound and informed discretion" of the trial court. *General American Life Insurance Co. v. Natchitoches Oil Mill, Inc.*, 160 F.2d 140, 143 (5th Cir. 1947). *See, e. g., Neary v. Markham*, 155 F.2d 485, 487 (10th Cir. 1946); *Cline v. Kurzweil*, 141 N.J.Eq. 508, 58 A.2d 281 (1948). Generally, it is a remedy that compels the *performance* of the contract in the *precise terms* agreed upon.[3] An exception

has been carved out for the time of performance in ordinary contracts for the sale of land. The accepted doctrine is:

> [E]ven though a certain period of time is stipulated for its consummation, equity treats the provision as formal rather than essential, and permits the purchaser who has suffered the period to elapse to make payment after the prescribed date, and to compel performance by the vendor notwithstanding the delay, unless it appears that time is of the essence of the contract by express stipulation, or by inference from the conduct of the parties, the special purpose for which the sale was made, or other circumstances surrounding the sale. [*Soehnlein v. Pumphrey*, 183 Md. 334, 338, 37 A.2d 843, 845 (1944), quoted in *Kasten Construction Co. v. Maple Ridge Construction Co.*, 245 Md. 373, 379, 226 A.2d 341, 345 (1967).]

Neither party will be held strictly to the time limit but "the time limit is not nugatory, because it is not literally construed. 'Courts of Equity have regard to time so far as it respects the good faith and diligence of the parties.'" *Doering v. Fields*, 187 Md. 484, 491, 50 A.2d 553, 556 (1947), quoting Story, Equity Jurisprudence, § 1064 at 451–52 (14th ed. 1918). The time set in the contract must be looked upon as,

> an approximation of what the parties regard as a reasonable time under the circumstances of the sale. The vendor, therefore, had a right to expect that the vendees would be ready *about* that time. The vendees, on the other hand, were under an obligation to make the necessary efforts to consummate their purchase within the period they had agreed upon. [*Id.* at 490, 50 A.2d at 555–56 (emphasis in original).]

Generally, time can become of the essence when not originally in the contract by a refusal of one party to grant a further

---

2. Under the contract, this $10,000 could have been retained by Amoco upon default.

3. Usually the remedy of specific performance is available for contracts in which there exists: (1) a valid binding contract; (2) definite and

certain terms; (3) mutuality of obligation and remedy; (4) freedom from fraud and overreaching; and (5) lack of remedy at law. *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946).

extension after such extended date, *Reade v. McKenna*, 99 N.J.Eq. 764, 134 A. 371 (1917), or when "one party serve[s] notice on the other fixing a reasonable time within which the deal must be closed." *Holdridge v. Roberts*, 195 Misc. 646, 648, 89 N.Y.S.2d 619, 622 (1949). The specific words "of the essence" or any like phrase, need not appear, but rather it is sufficient that the meaning behind those words becomes apparent to the other party.

If a definite date for performance is specified in the agreement, but performance on time is not of the essence, either party has the power to make on that date or some subsequent date, performance essential and a condition of his own duty by giving notice to that effect, provided that the notice leaves a reasonable time for rendering performance. [3A Corbin, Contracts § 723 at 383 (1960). *See also* 91 C.J.S. *Vendor and Purchaser* § 104 at 1003 (1955).]

Once time is unilaterally made of the essence by explicit notification of such intent to the other party, the notification must provide a reasonable time for that party to tender performance. *Reade v. McKenna, supra* 134 A. at 372. If the time provided in the notification is not reasonable, then it is construed to be arbitrary and "an arbitrary notice of termination may be entirely disregarded." *Paradiso v. Mazejy*, 3 N.J. 110, 116, 69 A.2d 15, 18; *Larkin v. Koether*, 101 N.J.Eq. 176, 178, 137 A. 849, 851 (1927).

Reasonableness, out of necessity, must depend on the circumstances of each case. *Chabot v. Winter Park Co.*, 34 Fla. 258, 15 So. 756 (1894). The time given in the notice "must bear some reasonable comparison to the time which has already elapsed." *Orange Society of New Jerusalem v. Knoski*, 94 N.J.Eq. 632, 121 A. 448, 450 (1923) (holding that twenty days notice would have been reasonable).

As the court said in *Doering v. Fields, supra* :

[S]ince a time, presumed to be reasonable by all parties was fixed in the contract,
[the vendor was] not obliged to wait indefinitely after that time had expired.

. . . . . .

It cannot be reasonable or just for a court to require [the vendor] to be put at such a disadvantage. That is not what is meant by saying that time is not of the essence of a contract for the sale of real estate. It does not mean that one party can rely upon the principle to do nothing and embarrass the other. It means that neither party will be held strictly to the time limited, not that either party will be at liberty to disregard it entirely. [187 Md. at 491, 50 A.2d at 556.]

If the party receiving notice does not then perform within the time set, his right to specific performance will be lost. *Michaels v. Flapan*, 42 Misc.2d 812, 249 N.Y. S.2d 53 (1964). Once a day is fixed for performance, "the party whose duty it is to perform or tender performance first must do it on that day, or show his readiness or willingness to do it . . .", *Jaeger v. O'Donoghue*, 55 App.D.C. 383, 386, 6 F.2d 686, 689 (1925), quoting *Phillips & Colby Construction Co. v. Seymore*, 91 U.S. 646, 650, 23 L.Ed. 341 (1876), in order to get specific performance of the contract.

[If] the covenants in the contract were mutual and to be simultaneously performed, defendant was not required to execute the deed until the plaintiff presented himself, prepared, ready, and willing to execute the notes, the deeds of trust, and make the cash payment required, all of which plaintiff failed to do or failed to tender himself ready to do. [*Id.* at 386, 6 F.2d at 689.]

The party who demanded specific performance is still under an "obligation to make a full tender of performance before the expiration of the [extension]." *Id.*

■ The appellants contend that since time was not originally of the essence, the extension to October 15, 1976 was just another extension and settlement was to occur within a reasonable time of that date. In support of this contention appellants rely on such cases as *Kasten Construction Co. v. Maple Ridge Construction Co., supra* and

*Soehnlein v. Pumphrey, supra,* as authority for their assertion that the trial court abused its discretion in denying specific performance. We find that reliance misplaced.

In both *Kasten* and *Soehnlein,* specific performance for the sale of land was granted where the vendors, *without prior notification that time was of the essence, coupled with a reasonable extension of time after such notice for performance,* sought to declare a default. As the court in *Soehnlein* stated:

> [I]f a vendor reserves the right to forfeit the contract in the event of default in payments, but subsequently waives forfeiture for nonpayment at the stipulated time, he cannot suddenly change his mind and insist upon a forfeiture without giving to the vendee a reasonable notice of his intention to that effect. [183 Md. at 383, 37 A.2d at 845.]

Where time was not originally of the essence, to make it so, Amoco had to give reasonable notice to that effect coupled with a reasonable time thereafter in which to perform. *Holdridge v. Roberts, supra; Soehnlein v. Pumphrey, supra; Paradiso v. Mazejy, supra; Orange Society of New Jerusalem v. Konski, supra; Reade v. McKenna, supra.* Accordingly, before declaring a default, Amoco had to demand performance by a "clear, distinct and unequivocal notice fixing a reasonable time within which [to close]." *Ballen v. Potter,* 251 N.Y. 224, 229, 167 N.E. 424, 425 (1929). Amoco gave such clear and explicit notification to appellants. The letter of October 1 could leave no doubt that time was being made of the essence and that Amoco would allow no further extensions after October 15. Thus, the sole question remaining is whether under the circumstances the time from October 1 to October 15 was reasonable. The contract originally set a period of less than 30 days for performance. An extension of four months was granted until October 1. On that date, time was declared of the essence and a 15-day period was set for performance. During the time from May to October 15, the sole contingency which the appellants had to meet was that of obtaining financing. Under all the circumstances, we cannot say that the final 15-day limit was unreasonable. Since appellants were not prepared to perform on October 15, the trial court properly denied specific performance.

*Affirmed.*