**Alan ADAMS, Appellee,**

v.

**Roger AGNEW, et al., Appellants.**

**Nos. 88–7012, 88–7013.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 3, 1988.

Decided Oct. 28, 1988.

Harry F. Cole, Washington, D.C., for appellants.

Barry H. Gottfried, with whom Martin R. Leader and Andrew R. Polott, Washington, D.C., were on the brief, for appellees.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and POLLACK,* Senior United States District Judge.

---

* Of the United States District Court for the Southern District of New York, sitting pursuant to 28 U.S.C. § 294(d).

Opinion Per Curiam.

PER CURIAM:

Moana Kai Broadcasting Associates and Agnew–Sachs Broadcasting, both general partnerships, were competing applicants for a permit from the Federal Communications Commission (FCC or Commission) to construct an FM broadcast station in Honolulu, Hawaii. This case concerns the vitality of an agreement under which Agnew–Sachs would dismiss its permit application in exchange for payments from Moana Kai, personally guaranteed by George Kimble, one of Moana Kai's principals. The district court, upon finding that the parties had reached an enforceable agreement, granted Moana Kai's motion for a declaratory judgment.

We reverse. If indeed there was ever an enforceable agreement, a matter we need not and do not decide, the failure of Moana Kai promptly to demonstrate readiness to carry out its side of the bargain released Agnew–Sachs from its undertaking.

## I.

The episode-in-suit opened when Moana Kai, Agnew–Sachs, and a third party, Alan Adams, filed mutually exclusive applications at the FCC for a permit to build and operate a new radio station in Honolulu. The FCC scheduled a comparative hearing for May 7, 1985. On May 6, Adams and Moana Kai agreed that Adams would dismiss his application in exchange for a 25 percent interest in Moana Kai and a payment of $15,000 by Moana Kai's principals. Moana Kai and Agnew–Sachs, at that same time, were attempting to reach a settlement whereby Moana Kai would pay Agnew–Sachs to withdraw its application.

On May 7, the parties advised the FCC Administrative Law Judge (ALJ) of their

negotiations and asked for additional time to complete them.[1] The ALJ expressed concern, based on past experience with announced settlements that later fell apart; he therefore sought concrete assurance that the parties would reach a dispositive agreement.[2] The next day, May 8, the parties submitted to the ALJ a Joint Motion to Suspend Hearing Dates (Joint Motion), *reprinted in* Appendix (App.) at 19–24, which set forth in some detail the terms that had been discussed and "agreed to in principle." *Id.* at 1; App. at 19. According to the Joint Motion, Agnew–Sachs would dismiss its application in exchange for $35,000 in cash and a three-year promissory note for $65,000, paid in monthly allotments. The note was to be secured by "personal guarantees" of George Kimble, a Moana Kai principal, and Alan Adams. The Joint Motion also stated that the parties would proceed in good faith, and as diligently as possible, from "agreement-in-principle" to "final resolution and completion of the necessary documents." *Id.* at 5; App. at 23. "[T]he final settlement agreement" and "all supporting documents" were to be submitted to the ALJ "within 21 days." *Id.*[3]

Based on these representations in the Joint Motion, the ALJ on May 13 granted the request for a twenty-one day continuance. On June 3, counsel for Agnew–Sachs, with the authorization of counsel for Moana Kai, requested a two-week extension, which expired on June 17. On June 18, counsel for Agnew–Sachs wrote to the ALJ, stating that the parties had reached an impasse on one aspect of the arrangement and were "presently unable to submit documents which represented a complete and mutually-agreeable settlement." Letter from Mark A. Kirsch, Counsel for Agnew–Sachs, to ALJ John A. Conlin (June 18, 1985). Although the two-week extension had expired, the parties did not formal-

---

1. *See* Transcript, May 7, 1985 Hearing Conference before Administrative Law Judge John H. Conlin, *In the Matter of: Honolulu, Hawaii,* FCC No. MM 84–985, *reprinted in* Appendix (App.) at 7–18.

2. *See* App. at 29, 33.

3. At the May 8 conference on the Joint Motion, the ALJ stated his understanding "that if, for some reason, the agreement doesn't come about, we go back to [comparative] hearing in 21 days." Transcript, May 8, 1985, FCC No. MM 84–985, *reprinted in* App. at 29.

ly request additional time; counsel for Agnew–Sachs stated, however, that he would file a further status report with the ALJ on June 24. *Id.*

During their exchanges between May 8 and June 24, the parties wrangled over the terms of Kimble's personal guarantee. Specifically, it appears that Agnew–Sachs wanted a firm "payment guarantee," which would permit Agnew–Sachs to seek payment immediately from Kimble in the event of a default on the note, whereas Kimble considered "fairer"[4] a diluted version, more in the nature of a "collection guarantee," whereby Agnew–Sachs would first have to attempt collection on a judgment against Moana Kai before proceeding against Kimble. Thus, when Agnew–Sachs' counsel on May 20 mailed to Kimble's counsel a set of proposed documents which included a payment guarantee, Kimble's counsel on June 10 sent back a set of revised documents which included a collection guarantee. On June 19, Agnew–Sachs' attorney wrote what the parties now call the "ultimatum letter"; this communication advised Kimble and Moana Kai that Agnew–Sachs would accept only a payment guarantee. The letter, sent by overnight mail, enclosed the documents needed to fulfill the parties' agreement and stated that there would be no further settlement discussions unless all the documents were executed and returned to Agnew–Sachs by June 21. Stipulation 49, Stipulated Facts in *Adams v. Agnew*, No. 85–2270 (D.D.C. Nov. 9, 1987) [available on WESTLAW, 1987 WL 20240].

Moana Kai returned executed copies of some of the documents on June 21 and June 24, but did not return an executed note or guarantee from Kimble. Because of Moana Kai's failure to comply with the terms of the ultimatum letter, Agnew–Sachs notified Moana Kai and the ALJ on June 24 that a settlement of the case had not been achieved; accordingly, Agnew–Sachs reported to the ALJ that it was prepared to proceed with the comparative hearing. Letter from Mark A. Kirsch,

Counsel for Agnew–Sachs, to ALJ John H. Conlin (June 24, 1985).

The comparative hearing took place on July 17, 1985, and on October 21 the ALJ granted Agnew–Sachs' application and denied Moana Kai's (Adams had withdrawn his application). The FCC Review Board affirmed the ALJ's decision, *Agnew–Sachs Broadcasting*, 103 F.C.C.2d 899 (Rev.Bd. 1986), and the full Commission denied Moana Kai's application for review. *Agnew–Sachs Broadcasting*, F.C.C. 86–506 (released Nov. 14, 1986).

Adams and Moana Kai then filed suit in the United States District Court for the District of Columbia alleging that Agnew–Sachs had entered into, and breached, a binding settlement agreement. The district court decided that there was a binding agreement as of May 8, 1985. The court considered it clear that the Joint Motion, corroborated by statements made before the ALJ, was a writing evidencing an agreement. With regard to Kimble's guarantee, which proved to be the focus of contention after May 8, the court said that the term "personal guarantee," as used in the Joint Motion, is a commercial term of art that unambiguously denotes a payment guarantee. Thus, the district court concluded, the parties' subsequent dispute over the wording of the guarantee did not vitiate the agreement reached on May 8. Memorandum and Declaratory Order, *Adams v. Agnew*, No. 85–2270 (D.D.C. Nov. 9, 1987).

The district court, however, did not specifically advert to the question whether, assuming a May 8 agreement, Moana Kai's failure to perform its obligation to execute conforming, formal settlement documents in a timely fashion released Agnew–Sachs from its obligation to dismiss its FCC permit application. We assume, without deciding, that there was a contract on May 8, but hold that Moana Kai's delay and failure to return a payment guarantee by Kimble in compliance with Agnew–Sachs' "ultima-

---

**4.** *See* Deposition of George W. Kimble at 43 (deponent states he didn't sign documents Agnew–Sachs sent because "[w]e were still trying to get a fairer personal guarantee agreement negotiated").

tum letter" justified Agnew–Sachs' refusal to negotiate further and its report back to the ALJ on the unsettled status of the case and its readiness "to go forward with the hearing." *See* Letter from Mark A. Kirsch, Counsel for Agnew–Sachs, to ALJ John H. Conlin (June 24, 1985).

## II.

Assuming a Moana Kai—Agnew–Sachs agreement on May 8 which included Kimble's payment guarantee, the parties were obliged to submit the final documents by a certain time in order to cancel the comparative hearing. The ALJ several times voiced concern that he did not want to suspend the hearing date only to see the settlement fall through and the hearing placed back on track weeks later. *See, e.g.,* App. at 14–15, 18, 29, 31. The Joint Motion itself stated that the parties would submit "the final settlement agreement" and "all supporting documents" within twenty-one days. Joint Motion at 5; App. at 23. (Both sides interpreted this to mean twenty-one days after the ALJ granted the Joint Motion to suspend the hearing, not twenty-one days after the filing of the Joint Motion.) Just before expiration of the suspension period, on June 3, the parties requested two weeks more to negotiate. By June 19, there still was no final agreement to present to the ALJ. At that point, given the prompting from the ALJ to submit settlement documents as undertaken in the Joint Motion or proceed with the hearing, and given that the time limit, even as extended, had expired, Agnew–Sachs had cause to demand that Moana Kai perform its contractual undertaking by returning the executed documents—including, particularly, Kimble's payment guarantee—by June 21.

Under District of Columbia law,[5] one party can unilaterally make performance on the date specified in the contract or some subsequent date a condition for·his own obligation, even if the contract does not specify that time is of the essence, by notifying the other party and giving that party reasonable time to perform. *See Drazin v. American Oil Co.,* 395 A.2d 32, 35 (D.C. 1978); *see also* 3A CORBIN, CONTRACTS § 723, at 382–84 (1960). The reasonableness of the time allowed depends on the character of the performance required and the surrounding circumstances. *See Drazin,* 395 A.2d at 35; 3A CORBIN, *supra,* § 723, at 384.

In this case, the agreement embodied in the Joint Motion provided that all documents, in proper form, would be filed by June 3, a time limit then extended to June 17. Agnew–Sachs' "ultimatum letter" on June 19 notified Moana Kai that time was of the essence, and gave Moana Kai until June 21 to execute and return documents then, for the most part, familiar to Moana Kai. Assuming that Moana Kai did not receive the documents, sent by overnight mail, until June 20, Kimble had only a brief turn around time to sign the papers and send them back by overnight mail. In light of the character of the performance required and the surrounding circumstances, however, Agnew–Sachs' demand was not unreasonable. If, as appellees allege and the district court held, the parties had firmly agreed on May 8 to a *payment* guarantee, then all that was required of Kimble on June 20 was to acknowledge, at last, that that was indeed the quality of his undertaking and to act accordingly.[6] Moreover, even if an objection to same day return might have been in order, Kimble failed to sign and mail the guarantee by June 24; four days was surely ample time to perform the modest task of signing and mailing documents, when the contents of those

---

**5.** The settlement negotiations in May 1985 occurred in the District among counsel practicing here, and in the context of conferences with an FCC ALJ here. We therefore assume the application of District law, which no party has suggested should be displaced by any other regulating rule. *See generally* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 188, 194 (1971).

**6.** We stress in this regard that Moana Kai and Kimble do not maintain that any of the documents dispatched by Agnew–Sachs on June 19, 1985 are out of accord with the parties' agreement. Far from suggesting that another form of guarantee would be "fairer," *see supra* note 4, they now agree with the district court that from the start the obligation to furnish a payment guarantee was unambiguous.

documents were, in the main, known weeks earlier.

Although Kimble might well have indicated his reluctance to furnish the guarantee the district court found he had promised, and, after May 8, might have sought modification of the arrangement, once Agnew–Sachs made time of the essence, Kimble was no longer free to resist performance. When Kimble then continued to hold back a guarantee of the quality the agreement necessitated, Agnew–Sachs was obliged to wait no longer and appellees could no longer claim entitlement to specific performance.

Although the district court did not address the issue whether Agnew–Sachs' ultimatum letter made time of the essence and afforded Moana Kai and Kimble reasonable time, under the surrounding circumstances, for performance, we need not remand for findings on this question because our decision, as just recounted, is based on undisputed historic facts contained in the record. *Cf. Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1138 & n. 11 (7th Cir. 1986) (holding that, in interest of judicial economy, remand is unnecessary where issues are clear and turn on undisputed facts in record), *cert. denied*, — U.S. —, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1313 (5th Cir.1985) (same); *Shaw v. FBI*, 749 F.2d 58, 63 (D.C.Cir.1984) (same); *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1578 (Fed.Cir.1984) (same); *King v. Commissioner of Internal Revenue*, 458 F.2d 245, 249 (6th Cir.1972) (same); *McComb v. Utica Knitting Co.*, 164 F.2d 670, 674 (2d Cir.1947) (same).

### CONCLUSION

For the reasons stated, we reverse the judgment of the district court and instruct the entry of judgment for Agnew–Sachs.

*It is so ordered.*