Louis Lese, Appellant, v. Anna Lamprecht, Individually and as Executrix of Hugo Lamprecht, Deceased, Respondent.

Contract — when oral evidence inadmissible to vary or explain written contract — specific performance of contract for sale of land — when delay beyond time appointed to close contract may be excused.

Where a written contract is clear in its terms and purports to express the entire arrangement of the parties and to direct upon all the questions under consideration, it conclusively determines the rights of the parties and can neither be contradicted, varied nor explained.

Contracts that are collateral to, but independent of, a written contract may be established by oral evidence, but where the subject-matter upon which the parties contracted includes the matter sought to be established by parol, it is conclusively presumed, in the absence of fraud, that the contract, as written, includes an accurate and full statement of their intention.

Where a written contract provides for a deed free from all incumbrances with one expressly specified exception, oral evidence of a further exception made prior to or contemporaneous therewith is improperly received.

Where a written contract adjourning the time of closing a title included express agreements binding upon the parties in connection with the adjournment without expressly making the time, to which the closing of title was adjourned, of the essence of the contract, the reception of parol evidence of an agreement prior to and contemporaneous with such written contract to the effect that time should be of the essence thereof is error.

Where the time for closing a transaction for the sale of real property is not expressly made of the essence of the contract, and it does not appear that a short delay would essentially affect carrying out the intention of the parties, courts of equity may compel specific performance although the party asking therefor has failed to perform his part in the exact time specified therein, provided such failure has not arisen from bad faith or inexcusable delay.

*Lese* v. *Lamprecht*, 123 App. Div. 919, reversed.

(Submitted June 11, 1909; decided October 12, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered

January 25, 1908, affirming a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John D. Connolly* for appellant. As it was not expressly stipulated in the contract that time was of its essence; as the subject of the sale did not fluctuate in value, and there had been no change of circumstances, and the delay, if any, did not involve the vendor in any loss, and every act of the vendee was in affirmance of the contract, specific performance should have been decreed. (*Hun* v. *Bourdon*, 57 App. Div. 351; *Willis* v. *Dawson*, 34 Hun, 492; *Shipman* v. *Cummins*, 19 N. Y. Supp. 974; *Margraf* v. *Muir*, 57 N. Y. 155; *Bennet* v. *Bennet*, 10 App. Div. 550.) The court below improperly admitted oral testimony to vary the terms of the written contract. (*House* v. *Walch*, 144 N. Y. 418; *Corse* v. *Peck*, 102 N. Y. 513; *Brantingham* v. *Huff*, 174 N. Y. 53; *Stowell* v. *G. Ins. Co.*, 163 N. Y. 298; *Dady* v. *O'Rourke*, 172 N. Y. 447.)

*Arthur J. Westermayr* for respondent. The time for closing the title was adjourned from October 5, 1905, to November 3, 1905, upon the positive understanding that the title would be closed on that date. As a condition for the adjournment time was made the essence of the contract. (*Dwark* v. *Weinbe.·g*, 139 N. Y. S. R. 504.) The court below properly admitted testimony as to the mortgage on the property and as to time being the essence of the contract, although no provisions as to the same were contained in the written adjournment. (1 Rice on Ev. 259; *Durkin* v. *Cableigh*, 17 L. R. A. 290; *Juillard* v. *Chaffee*, 92 N. Y. 535; *Englehorn* v. *Reittinger*, 122 N. Y. 80; *Chapin* v. *Dobson*, 78 N. Y. 74; *Norman* v. *White*, 30 Neb. 302.)

CHASE, J. This action is brought to compel the specific performance of a written contract made by the defendant's

3

testator in his lifetime with the plaintiff by which he agreed at a place and on a day and hour therein named to convey to the plaintiff a certain piece of real property for the consideration of $7,500. The contract provided that the plaintiff should pay " Five Hundred Dollars on the execution of this (said) agreement * * * Seven Thousand Dollars in cash on the delivery of the deed * * *" and said testator agreed upon receiving such payment to deliver to the plaintiff " A full covenant warranty deed for the conveying and assuring to him * * * the fee simple of said premises free from all incumbrances * * * and subject to a party wall agreement recorded in the office of the register of the county of New York in liber 859 of conveyances at page 375."

On the day and hour mentioned in said contract a further contract in writing was entered into by and between the same parties, adjourning the time for closing the title under the original contract to November 3d, 1905, at 11 o'clock A. M., at a place therein named, and said contract also provided : " It is understood and agreed that the vendee will pay interest on the balance of the purchase money from the date hereof to November 3d, 1905, and that the vendor can remain in possession of the said premises from November 3d, 1905, to December 1st, 1905, as a tenant at a rental of one dollar ($1.00), Title to be closed as of October 5, 1905."

On November 3d, at 11 o'clock A. M., as provided in said further contract, the parties met at the place in said further contract provided. It then appeared that the title to the real property mentioned in the contract was being examined by a well-known firm of attorneys in the city of New York for the purpose of making a loan thereon to the vendee, and that the searches therefor had been made by, but not returned from, the Lawyers' Title Insurance and Trust Company, and the plaintiff asked that the closing of title be held open or adjourned until a later hour of the day or until the following day. The defendant's testator refused to further adjourn the time for closing title, whereupon it appearing that there was

a mortgage on the property held by a savings bank, the plaintiff stated that if the defendant's intestate would procure a release of the mortgage he would pay the consideration named in the contract without further delay. The defendant's intestate then tendered a deed without including therewith a cancellation of said mortgage and demanded the consideration named in the contract, which being refused he left the office where the contract was to be closed. A few days thereafter, when this action was about to be commenced, the attorney for the defendant's intestate said that he would endeavor to close the title, and arranged for a meeting of the plaintiff and his client at eight o'clock in the evening of the day in question. The plaintiff and his attorney were eight minutes late in meeting said engagement, and the defendant's intestate refused to consummate the transaction, although he said that he would have done so if the plaintiff had met him at an earlier hour. The trial court found: " *Third.* That on the 5th day of October, 1905, the parties met according to the terms of said contract and the defendant then agreed to extend the time for closing at the request of the plaintiff to November 3, 1905, at 11 o'clock at the same place, and that defendant appeared on said adjourned day November 3 at the appointed place ready and willing to make title, and did then and there tender a duly executed full covenant warranty deed in accordance with the terms of said contract, and that the plaintiff through his attorneys and representatives requested a further adjournment which, however, was refused by the defendant through his attorney.

" *Fourth.* That on October 5, 1905, as a condition for the granting of the adjournment until November 3, 1905, it was agreed that no further adjournment should be granted to the plaintiff and that the title should close absolutely on that day, and that no other agreement to close at any other or future date was entered into by the defendant either personally or through or by his attorney.

" *Fifth.* That the case is without proof that consent was obtained for the closing on any other date than November 3,

1905, at which time defendant was ready and willing to convey."

The third and fourth findings are each based in a material part upon oral testimony received, subject to objection and exception, to the effect that prior to and contemporaneous with the making of the original written contract the plaintiff agreed with the defendant's testator to accept the title to said real property without a previous discharge of the savings bank mortgage thereon and to retain a sufficient portion of the consideration specified in the contract to pay said mortgage thereafter; and also that prior to and contemporaneous with the making of the further contract adjourning the closing of said title from October 5 to November 3 it was orally agreed that no further adjournment should be granted to the plaintiff, and in substance that the time mentioned ·in the contract be made of the essence thereof.

We are of the opinion that such testimony was improperly received. The general rule that oral testimony cannot be received to vary a written contract is well established and generally conceded. It has become a rule of substantive law. It stands as a bar against using oral testimony to overthrow a solemn and deliberate contract and arises from the presumption that the parties to a contract by placing their engagement in writing intend to avoid the consequences arising from defects of man's memory and the possibly prejudiced statements of interested witnesses.

Contracts are frequently made that are collateral to, but independent of, a written contract and they can be properly established by oral testimony. Evidence of such contracts is sometimes referred to as an exception to said general rule. It is more accurate to say that collateral and independent contracts can be shown by oral testimony because it was not the intention of the parties thereto to include such contracts in the writing. Collateral contracts are thus frequently established by oral testimony, because they are collateral; and ambiguous written contracts are explained by oral testimony, because they are ambiguous.

The value and integrity of a written instrument is largely dependent upon the fact that it cannot be broken down or modified by a statement of alleged conversations and occurrences leading up to its execution. Where a written contract is clear in its terms and purports to express the entire arrangement of the parties and to direct upon all the questions under consideration it conclusively determines the rights of the parties and can neither be contradicted, varied nor explained. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Stowell* v. *Greenwich Ins. Co.*, 163 N. Y. 298; *Corse* v. *Peck*, 102 N. Y. 513; *Brantingham* v. *Huff*, 174 N. Y. 53; *House* v. *Walch*, 144 N. Y. 418; *Dady* v. *O'Rourke*, 172 N. Y. 447.)

In deciding whether a particular promise or agreement is collateral and independent of the principal and written contract it is necessary to determine whether the parties to the written contract intended to include therein all of the promises relating to the subject-matter under consideration.

Professor Wigmore, in his work on Evidence, says: "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges, and is in contrast with the looser and incorrect inquiry whether the alleged extrinsic negotiation contradicts the terms of the writing." (Wigmore on Evidence, § 2430.)

The written contract between the parties now before us provided for a deed free from all incumbrances. It expressly specified one exception to such covenant without including in the written contract a further exception to the effect that the property could be transferred subject to the savings bank mortgage.

Again the written contract adjourning the time of closing

the title included express agreements binding upon the parties in connection with the adjournment without expressly making the time to which the closing of title was adjourned of the essence of the contract.

In each case the subject-matter upon which the parties contracted included the matter sought to be established by oral testimony. In each case the subject-matter was within the consideration of the parties in making the written contracts and in the absence of fraud it is conclusively presumed that the contracts as written include an accurate and full statement of the intention of the parties.

Where a contract is made for the sale of real property and the time for closing the transaction is not expressly made of the essence of the contract and where it does not appear from the contract itself and the surrounding circumstances that a delay of a few hours or days would essentially affect carrying out the intention of the parties, courts of equity may in their discretion compel the specific performance of the contract even although the party asking for such specific performance has failed to perform his part of the contract in the exact time specified therein providing such failure has not arisen from bad faith or inexcusable delay. (Pomeroy's Equity Jurisprudence [2d ed.], § 1408; *Kahn* v. *Chapin*, 152 N. Y. 305; *Hun* v. *Bourdon*, 57 App. Div. 351.)

The judgment, therefore, should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and WILLARD BARTLETT, JJ., concur

Judgment reversed, etc.