Charles A. Loreto, J.
This action was tried by the court without a jury.
It appears that the plaintiff had purchased from the defendant its bottling plant in Pittsburgh. (For the purposes of this suit, the defendants are treated as one.) Within a year, seeking to be relieved of the business and of installment payments he had undertaken to make, he besought the defendant to take it back.
The plaintiff represented to the defendant that the inventory was $212,286. Upon insisting that it be in that amount the defendant agreed to reacquire the business for the sum of $75,000, canceling plaintiff’s indebtedness to him. At the time the plaintiff believed that the inventory might somewhat exceed the figure mentioned for inventory and asked defendant what he would do about it. In answer, the defendant, in substance, said that if it came to a little more than $212,000 he would pay a couple of thousand dollars more.
Shortly thereafter a written contract dated September 17, 1958 was entered into by the parties. It provides for the sale of all the personal property (excepting several items about which no dispute is made), owned by the plaintiff and located at the bottling plant, set forth in Appendix A, B and C of a *656 mortgage previously entered into between the parties, together with all subsequently acquired personal property. The contract provides for $25,000 cash payment and the balance in installments. A bill of sale and general release were executed and delivered by the plaintiff pursuant to the terms of the contract.
The plaintiff has brought suit to recover what he claims is excess of inventory over $212,286 plus certain prepayment adjustments totalling $22,443.48. There are three categories of items that this claim embraces — excess inventory, usual closing adjustments of rents, taxes, etc., and prepaid insurance premiums.
The defendant has resisted plaintiff’s suit primarily on the ground that the written agreement is complete on its face and therefore that the plaintiff is barred by the Statute of Frauds.
The plaintiff’s complaint sets forth the written contract and alleges in paragraph 9 that the parties agreed that in the event the inventory of the bottling plant would prove to be less than $212,286 when taken by accountants, £ ‘ the plaintiff would pay the difference and should there be more, the defendant would pay for such excess, as well as adjustments for prepayments ”. He also alleges that the inventory taken by the accountants amounted to $215,599.55 and that there is due to plaintiff for equipment additional to that originally transferred by defendant to plaintiff the sum of $10,508.72 plus adjustments for prepayments of $11,934.76, totalling $22,443.48.
The written contract makes no mention of any adjustment in purchase price because of any variation in inventory and it is silent on the subject of any adjustments as to rent, taxes, etc. on closing of title.
The plaintiff sought to overcome this apparent difficulty by asserting that the written contract is ambiguous and that the real intent of the parties may be shown by their conduct and also by asserting that there was an oral contemporaneous collateral agreement as to these items.
Although the court allowed, subject to a motion to strike, proof of oral conversations had prior to the execution of the written contract, as to which the defendant admitted that he had said that he would pay a couple of thousand dollars additional if the inventory exceeded $212,000, and also allowed testimony of subsequent conduct of the parties tending to confirm this representation and understanding, this evidence can be of no help to the plaintiff since the defendant now refuses to make good his oral promise and the court is constrained to strike this testimony. In the court’s opinion there is no ambiguity in the contract. It was a distress sale. The plaintiff was *657 a suppliant and in no position to bargain. The defendant insisted on a “ lock, stock and barrel ” deal, adding a hollow gesture that he would add a couple of thousand more if the inventory exceeded the $212,000 figure. While there undoubtedly exists a moral obligation on the part of the defendant, the court cannot convert it into a legal obligation in view of the cause pleaded. The written agreement is clear in its terms and purports to express the entire arrangement of the parties (Thomas v. Scutt, 127 N. Y. 133). Therefore it may not be varied nor explained. All that can be said is that the plaintiff is the victim of his own circumstances.
Nor can the plaintiff find comfort or help in asserting an oral contemporaneous collateral agreement covering inventory adjustment and what are considered the usual closing adjustments, for these matters are usually the subject of negotiation in a transaction of this nature and are ordinarily embodied in the writing. They must be considered an integral part of the transaction. If not found in the writing, it is presumed that it was not intended to embody those elements of the negotiation.
Where the basic transaction reasonably and ordinarily, if not necessarily, would embrace discussion, negotiation and agreement as to various subjects and elements, and a written contract executed by the parties follows, it would be destructive of the salutary purpose of the Statute of Frauds to hold that such subjects and elements not included in the written contract may be established under and as part of a contemporaneous collateral oral agreement. Otherwise it would result in an implausible fragmentation into a number of alleged separate agreements, claimed partly written and partly oral, of the multitude of subjects that really make up but one comprehensive agreement. In sum, the extrinsic contemporary negotiation does not come within the permissible rule of oral collateral agreement (Lese v. Lamprecht, 196 N. Y. 32).
However, with respect to the insurance premiums the situation is different. The insurance policies were clearly not intended to be transferred. These were stricken from the bill of sale. The defendant acquired them, therefor, apart from the agreement of sale and transfer. He has benefited unjustly to the extent of the prepaid premium, which the court finds in the sum of $5,658.67. For a recovery of this item, during trial a cause for unjust enrichment and money had and received was permitted to be added.
Plaintiff’s motion made during trial to amend the complaint to add allegations to paragraphs 7 and 8 of the complaint, on which decision was reserved, is denied.
*658 This constitutes the decision of the court and its findings and conclusions as required by the Civil. Practice Act.
Judgment may be entered in favor of plaintiff for the sum of $5,658.67 with interest thereon from September 17,1958. Thirty days ’ stay.