■ WILLIAM TARLO, Appellant, v ARTHUR J. ROBINSON et al., Respondents.—In an action, *inter alia,* for specific performance of a contract to purchase real property, the plaintiff

appeals from a judgment of the Supreme Court, Suffolk County (Underwood, J.), dated January 4, 1984, which, after a nonjury trial, dismissed his complaint against the defendants and directed the defendants to return to the plaintiff a $3,000 down payment made on the contract.

Judgment reversed, on the law and the facts, with costs, judgment directed in favor of the plaintiff on the complaint, and matter remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith and the entry of an appropriate judgment, to wit, directing specific performance of the contract, or, if the property has been sold during a period when a notice of pendency of this action was not in effect, an award of damages to the plaintiff.

The subject of this action is a parcel of real property known as District 904, Section 7, Block 5, Lot 17, on the land map of the Incorporated Village of Southampton, Town of Southampton, County of Suffolk. The defendants, the owners of the property, listed it with a broker for sale at an asking price of $33,000. The broker produced one Alexander McIlvaine as a prospective purchaser. The defendants' attorney, Donald Mahoney, prepared a contract of sale with a closing date of August 25, 1980. The contract did not contain a provision stating that time was of the essence. Upon receipt of the contract, McIlvaine unilaterally changed the closing date from August 25, 1980 to September 25, 1980, signed the contract and returned it with a down payment of $3,000 to the defendants' attorney. Notwithstanding McIlvaine's unilateral change of the closing date to September 25, 1980, the defendants signed the contract on or about August 18, 1980, and a copy was returned to McIlvaine.

Subsequently, McIlvaine wrote to the defendants' attorney asking for a two- or three-month extension of the time to close title. On advice from his clients, attorney Mahoney wrote a letter, dated October 1, 1980, informing McIlvaine that the closing was scheduled for October 14, 1980 and no further adjournments would be granted by the defendants. On October 8, 1980, the defendants' attorney sent another letter to McIlvaine, enclosing a proposed closing statement and reiterating that the closing was scheduled for October 14.

On October 9, the defendants' attorney received a mailgram from McIlvaine stating that he would be out of the country on October 14, but that he had been told by the broker that the defendants and their attorney (Mahoney) agreed to an additional adjournment to October 24. The defendants' attorney

testified that he had not agreed to an adjournment past the scheduled closing date of October 14. Mahoney further testified that on October 14 he was present at his office with a deed previously executed by the defendants and ready to be tendered. However, neither the purchaser, McIlvaine, nor his representative appeared. At this point in time, Mahoney had not received a title insurance report and the deed he prepared was based on the deed by which his clients had originally obtained title.

Within a week prior to October 20, McIlvaine asked Frederick McLoughlin, one of the broker's real estate salesman, if he knew of anyone who would accept an assignment of the contract of sale and purchase the subject parcel. The salesman showed the property to the plaintiff, who agreed to purchase it. According to this salesman, when he told the defendants that the contract would be assigned to the plaintiff, the defendant Arthur Robinson's response was, "I don't care who buys it, I just want it sold".

On October 20, pursuant to an appointment, the plaintiff and the real estate salesman appeared at the office of Mahoney, the defendant's attorney. The salesman delivered to the plaintiff the contract of sale containing a provision assigning all the right, title and interest of McIlvaine to the plaintiff. The assignment provision had already been executed by the original contract vendee, McIlvaine. In the presence of the defendants' attorney, the plaintiff accepted the assignment and signed the document. As consideration for the assignment, the plaintiff paid McIlvaine $3,000, representing reimbursement of the down payment McIlvaine gave to the defendants. Above the assignment provision of the contract are the following words: "Closing of title under the within contract is hereby adjourned to *October 24, Friday, 1980,* at *11 A.M.* o'clock at *Mr. Mahoney's office*" (emphasis added). The emphasized words are handwritten.

It is noteworthy that as of October 20, a title insurance report had not yet been received by either party, although it had previously been ordered by the broker at the request of McIlvaine.

The particulars of the conversation which occurred at the October 20 meeting are in dispute. The defendants' attorney, Mr. Mahoney, testified that he advised the plaintiff and the real estate salesman that the contract did not prohibit an assignment and, therefore, he had no control over the assignment. Mahoney further testified that he told the plaintiff that the defendants were holding McIlvaine in default as of the

scheduled October 14 closing date and that McIlvaine's request for an adjournment of the closing until October 24 had not been agreed to by defendants. Mahoney denied ever having agreed to an adjournment beyond October 24. The plaintiff, a British solicitor, testified that Mahoney never mentioned that the defendants were holding McIlvaine in default. He also testified that he discussed the "question of arranging a closing date" with the defendants' attorney since he and his wife were to leave that day for a three-week visit to England. Mr. Mahoney informed the plaintiff that there had been considerable delay in the closing of title, that his clients would be very unhappy at a further delay, that he was also leaving for a holiday that week and would advise the plaintiff of a future closing date after obtaining his client's instructions. Thereafter, the plaintiff was never notified of a specific closing date by either the defendants or their attorney. The real estate salesman corroborated the plaintiff's testimony that no closing date had been fixed at the October 20 meeting and that it was his understanding that the closing would take place when everyone returned from vacation.

On October 29, Mahoney, the defendants' attorney, wrote a letter to assignor McIlvaine and the broker, stating as follows: "Since only Mr. Robinson [the defendant] appeared for the closing on October 24, 1980 at 11:00 A.M., please be advised that Mr. Robinson hereby declares you in default under the contract of sale dated August 18, 1980". The plaintiff was out of the country on October 29, 1980 and never received a copy of this letter. Thus, he was not informed of the alleged default.

Upon returning from England during the week of November 22, 1980, the plaintiff telephoned the defendants' attorney to ascertain whether he had resolved certain questions raised in the title report. Mahoney informed the plaintiff that the defendants had treated the contract as terminated by reason of McIlvaine's default. According to the plaintiff, he had sufficient funds in his bank account to pay the total purchase price. By letter dated November 22, 1980, the plaintiff notified the defendants that unless they fulfilled the contract, he would take legal action to enforce it. According to the real estate salesman, after October 24, 1980, he asked the defendant Arthur Robinson why he refused to close. Robinson responded that "he thought the lot was worth more money". The plaintiff subsequently commenced this action for specific performance of the contract, or, in the event such relief could not be awarded, damages in the amount of $30,000.

At the conclusion of a nonjury trial, the Trial Judge dismissed the plaintiff's complaint, finding that there was undue delay by the original contract vendee (McIlvaine) in closing title, that McIlvaine was in default, and that the plaintiff, as assignee, was in the same position as McIlvaine. Since the Trial Judge found that the defendants had not shown any damages due to the breach of the contract, he directed the defendants to return the $3,000 down payment to the plaintiff.

When time is not of the essence of a contract for the sale of real property, either party to the contract is entitled to a reasonable adjournment of the designated closing date without the passage of the law day amounting to an incurable contractual default (see, Lese v Lamprecht, 196 NY 32; Schoen v Grossman, 33 Misc 2d 490, 492, affd 17 AD2d 778, rearg and lv denied 17 AD2d 942). It is fundamental that time is never of the essence of a contract for the sale of real property unless the contract specifically so provides or special circumstances surrounding its execution so require (see, Ballen v Potter, 251 NY 224, 228; Schoen v Grossman, supra). Neither of these factors exists in the instant case. Although the proposed contract of sale originally drafted by the defendants' attorney provided for a closing date of August 25, 1980, it did not provide that time was of the essence. Moreover, paragraph 23 of the contract provided that each party's attorney was authorized to agree in writing to any changes in dates and time periods provided for in the contract. When the plaintiff's assignor (McIlvaine) unilaterally changed the closing date to September 25, 1980, the defendants acquiesced in this modification as evidenced by their signing the contract containing it, their acceptance of the down payment and their return of a copy of the contract to McIlvaine. These circumstances indicate that time was not of the essence and that the initial, mutually agreed-upon closing date was scheduled for September 25, 1980. Thereafter, the defendants consented to an adjournment of the closing date to October 14. In light of subsequent events, neither the defendants' attorney's letter of October 1, which stated, in substance, that there would be no further adjournment of the closing date beyond October 14, nor his letter of October 8, sufficed as a clear, unequivocal notice that time was now of the essence (see, Ballen v Potter, supra; Schoen v Grossman, supra; cf. Michaels v Flapan, 42 Misc 2d 812, affd 23 AD2d 967).

The Trial Judge's finding that the plaintiff's assignor had been in default under the closing terms of the contract of sale is against the weight of the evidence. Although a closing did

not occur on October 14, we find that the defendants had waived this date and had granted the plaintiff's assignor's request for a further adjournment to October 24. The defendants' attorney's assertions to the contrary are belied by the fact that he hosted a meeting on October 20 at which time the plaintiff accepted an assignment from McIlvaine of a contract of sale purportedly containing a substituted closing date of October 24, and by his letter of October 29, declaring McIlvaine in default for not closing on October 24. Moreover, it is inconceivable that the plaintiff, a British solicitor, would have knowingly accepted an assignment on October 20 from a contract vendee who was in default under the closing terms of the contract.

We further find that the plaintiff's failure to close on October 24 does not constitute a default. With respect to this issue, it is significant that, at the time of the assignment, the defendants' attorney was notified that the plaintiff could not close on October 24 because he was leaving after the meeting for a three-week visit to England. Absent a representation by the defendants' attorney that the October 24 closing would be rescheduled to a reasonable date in the future, it is incredible that the plaintiff would have accepted the assignment knowing he could not perform on October 24. Consistent with the plaintiff's and Mr. McLoughlin's testimony, we find that the plaintiff accepted the assignment and left for England in reliance upon the representations of the defendants' attorney that the closing was adjourned to a reasonable date to be designated after counsel consulted with his clients and that the defendants' attorney would notify the plaintiff of the closing date. "When there is an indefinite adjournment, some affirmative act has to be taken by one party before he can claim the other party is in default; that is, one party has to fix a time by which the other must perform, and he must inform the other that if he does not perform by that date, he will be considered in default" (Royce v Rymkevitch, 29 AD2d 1029, 1030, citing Scudder v Lehman, 142 App Div 631, 634; see also, 1 Warren's Weed, New York Real Property, Adjournments § 2.03 [4th ed]). No such action was taken by the defendants or their agent.

As of November 22, 1980, the plaintiff had returned from England and it was not disputed that he was ready, willing and able to perform the contract. Moreover, the defendants would have suffered no substantial prejudice by adjourning the closing for an additional four weeks (approximately two months from the original closing date). Since time was never

made the essence of this contract for the sale of real property, the plaintiff, as the assignee of the contract vendee, was entitled under all of the circumstances surrounding this transaction to a reasonable adjournment of the October 24 closing date until his return from England (see, Hersh v Feifer, 140 NYS2d 272). Such an adjournment was reasonable, especially in view of the fact that a diligently ordered title insurance report had not been received by the parties as of October 20. The defendants' specious attempt to establish a default based upon the assignor's failure to close on October 24, a date after the contract had been assigned to the plaintiff, and the defendants' unreasonable refusal to adjourn the closing until the assignee's return from England cannot, in equity, serve to defeat the assignee's contractual rights. Accordingly, the judgment dismissing the plaintiff's complaint is reversed, and the plaintiff is awarded judgment on his complaint. Mangano, J. P., Bracken, Rubin and Kunzeman, JJ., concur.