■ CDC NASSAU ASSOCIATES, Appellant, et al., Plaintiff, v ELLICE FATOULLAH et al., Respondents.—Order and judgment (one paper) of the Supreme Court, New York County (Beatrice Shainswit, J.), entered July 20, 1989, which denied appellant's motion for partial summary judgment and granted defendant's cross motion for summary judgment, modified, on the law and the facts, to grant appellant partial summary judgment to the extent of awarding it specific performance and severing its claim for expenses and damages as demanded in the action bearing index No. 479/88, and declaring in the action bearing index No. 2048/88 that appellant's rights to purchase the property did not expire and terminate as of January 2, 1988 and that defendants are obligated to convey such property to appellant, and is otherwise affirmed, without costs. The appeal from the order of the same court, entered October 2, 1989, which denied appellant's motion to renew the prior motions for summary judgment, is dismissed as academic, without costs.

Defendants seller argue that plaintiff buyer's failure to appear on January 2, 1988 at the place designated in the parties' contract for the closing was a breach of the contract, and that equitable relief in the form of specific performance excusing this breach cannot be granted since buyer's tender of the purchase price at that time was of the essence of the contract—in other words, that specific performance cannot be granted unless, as a threshold matter, the contract is definitively construed as not making time of the essence. We do not

think it necessary to go that far to make an award of specific performance. The issue, as we see it, is whether buyer honestly and reasonably believed that the closing was not to take place on January 2 (see, *Lese v Lamprecht,* 196 NY 32). For that purpose, it is enough to find only that the contract is ambiguous as to whether January 2 was a strict deadline for buyer's tender of the purchase price (see, *Jones v Gianferante,* 305 NY 135, 138), and that the circumstances are otherwise such as to show that buyer was not trifling with its obligations under the contract when it did not appear at the time and place designated in the contract for the closing (see, *Hubbell v Von Schoening,* 49 NY 326, 331).

Concerning construction of the contract, we take judicial notice of the fact that real estate attorneys customarily make time of the essence by use of the phrase "time being of the essence", and observe that this contract used that phrase to describe the notice buyer was required to give in exercising its purchase option, but it did not use it in the sentence immediately following specifying January 2 as the closing date. The juxtaposition is fairly characterized by buyer as "extraordinary", and lends considerable credence to buyer's assertion that it reasonably understood the contract not to make the January 2 closing date of the essence and honestly believed that seller would not hold it to that date, a Saturday in the middle of the New Year's holiday.

The oral exchanges between the parties in the weeks immediately preceding January 2, as recounted by seller, are consistent with a good-faith belief on buyer's part that seller was not insisting on a January 2 closing date. The crucial fact— and it comes through as much in seller's papers as in buyer's —is that the phone conversation between seller and buyer's attorney on December 21, 1987, the last contact between the parties prior to January 2, concluded with an expectation on the part of both persons to that conversation that there were to be further preclosing discussions concerning possible revisions to the contract. At worst, buyer's attorney was guilty of a discourtesy in not getting back to seller on December 23, 1987 after promising in the conversation of December 21 that he would (and also in not promptly returning seller's phone call of December 2, 1987 until December 21, 1987). Are we to find buyer guilty of bad faith and inexcusable delay because its attorney was rude? Given the ambiguity in the contract and an expectation of further discussions, if seller wanted to close on January 2, and believed itself ready and able to do so, it should have given the buyer clear, distinct and unequivocal

notice that it considered the January 2 closing date to be of the essence and was expecting buyer's tender of the purchase price at that time *(Ballen v Potter,* 251 NY 224, 228-229). Such a notice, if delivered at the end of December after buyer's attorney failed to call back on December 23, might well have been rejected by buyer as untimely, but at least it would have deprived buyer of the argument that the only reason it did not appear on January 2 at the place designated in the contract for the closing was because it honestly and reasonably believed that seller would not be there too. It is on the basis of that argument, and only that argument, that we grant specific performance.

Consistent with such an honest belief on buyer's part is the fact that January 2, 1988 was a Saturday *(see,* General Construction Law § 25 [1]; *Hirsch v Lindor Realty Corp.,* 63 NY2d 878); that the contract, executed four years before the scheduled closing, created a status quo seemingly favorable to seller or at least one not harmful to it if extended briefly beyond January 2; that seller never informed buyer of its receipt of a payoff letter from the bank known to hold the only mortgage on the premises setting forth the precise amount necessary to satisfy the mortgage, and, contrary to customary practice, did not prior to the scheduled closing request buyer's tender of a separate, certified check in the amount of such payoff letter; and that the New York State capital gains tax questionnaires had yet to be filled out and sent to Albany, so that, no matter how diligent the parties, there was no possibility of receiving a tentative assessment of tax due by January 2. Virtually all of the objective circumstances—ambiguity in the contract, no express demand by seller for buyer's performance, no request for a certified check in the amount of the mortgage, no possibility of receiving a tentative assessment of tax due by January 2, the expectation of further discussions concerning proposed revisions to the contract, a status quo of four years' duration favorable to seller, a Saturday closing date—all point to a good-faith belief on buyer's part that the closing was not to take place on January 2. The only objective circumstance indicative of bad faith on buyer's part was its failure to get back to seller on December 23, but this was not so vexatious as to warrant withholding of equitable relief. It is also true that buyer never gave seller written notice of its election to take a deed to the property rather than an assignment of seller's partnership interest, but seller did not consider this omission to be a default, and thus any uncertainty as to whether a deed or assignment was to be delivered at the

closing is simply another circumstance indicative of buyer's good-faith belief that further discussions and preparations were needed for an orderly closing.

While it is true that the parties never explicitly agreed to postpone the January 2 date, it is also true that seller never explicitly notified buyer that it considered a closing on that date to be of the essence, and that it would be performing its part of the bargain on January 2 and was expecting buyer to do the same. Even on January 2, during the two-hour period of time that seller was sitting in an empty conference room in the middle of the New Year's holiday, it made no attempt to contact buyer. It is because of this failure on seller's part explicitly to demand performance from buyer that we grant buyer specific performance. A party that would hold another to strict performance as to time is well advised to demand performance in no uncertain terms, at least in the absence of a contract unambiguously making time of the essence. Concur —Asch, Wallach and Smith, JJ.

Kupferman, J. P., concurs in the result only.